**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **EMMITT REED JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No.  1:06-cv-0044-WHA** |
| | ) |
| **SHERIFF GREG WARD, ET.AL,** | ) |
| | ) |
| **Defendants.** | ) |

### SPECIAL REPORT OF DEFENDANT GREG WARD

COMES NOW Greg Ward, a Defendant in the above-styled cause, and submits his Special Report to the Court.

### INTRODUCTION

On January 18, 2006, Plaintiff Emmett Reed Jones filed his Complaint in the United States District Court for the Middle District of Alabama.  The Plaintiff named as Defendants Geneva County Sheriff Greg Ward, Tracy Wise, and Gary Weeks.  On January 23, 2006, this Court ordered the Defendants to file a Special Report and Answer.  On March 3, 2006, the Court granted the Defendants' Joint Motion for Extension of Time allowing them until April 5, 2006, to file their Special Report and Answer.

The Plaintiff was arrested by the Sampson Police Department on two charges of Failure to Pay and booked into the Geneva County Detention Facility on January 3, 2006.  (Exhibit A, Inmate File of Emmett Reed Jones, "Inmate File," Booking Sheet dated January 3, 2006; Exhibit B, Inmate File, Prisoner Activity Sheet, Entry dated January 3, 2006.)  The Plaintiff was released from the Geneva County Detention Facility per the City of Sampson Magistrate Judge's order on

January 31, 2006. (Ex. A; Ex. B; Exhibit C, Affidavit of Sheriff Greg Ward, "Ward aff.," ¶ 16; Exhibit D, Affidavit of Carl Rowe, "Rowe aff.," ¶ 15.)

## PLAINTIFF'S ALLEGATIONS

The Plaintiff alleges that (1) he was imprisoned three times on the same charge; (2) the City of Sampson wanted him to pay for his hospital bills, and he was denied medical attention; (3) he sleeps on the floor; and (4) the showers do not drain.  (Plaintiff's Complaint, pp. 2-3.) Plaintiff requests damages and injunctive relief.  (Plaintiff's Complaint, p. 3.)

## DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendant Ward denies the allegations made against him by the Plaintiff as being untrue and completely without basis in law or fact.  Defendant Ward denies that he acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Ex. C, Ward aff. ¶ 5.)  Defendant Ward raises the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, mootness, quasi-judicial immunity, and additional defenses presented below.  Defendant Ward reserves the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.     FACTS

Greg Ward is the duly elected Sheriff for Geneva County, Alabama. (Ex. C, Ward aff. ¶ 2.)  He is familiar with the Plaintiff due to his being incarcerated in the Geneva County Detention Facility.  However, Sheriff Ward does not have personal knowledge concerning the specific allegations in the Plaintiff's Complaint. (Ex. C, Ward aff. ¶ 3.)  Sheriff Ward has delegated the responsibility for the day-to-day functions of the Geneva County Detention Facility

to the Jail Administrator Carl Rowe.  As Sheriff of Geneva County, Sheriff Ward is responsible for promulgating the policies governing the Jail.  (Ex. C, Ward aff. ¶ 4.)

The Geneva County Sheriff's Office has a contract with the City of Sampson.  Pursuant to this contract, the Sheriff's Office has agreed to house inmates for the City of Sampson at a charge of $20 per day.  (Ex. C, Ward aff. ¶ 6; Ex. D, Rowe aff., ¶ 5.)  The Plaintiff was arrested by the Sampson Police Department and incarcerated pursuant to the order of the City of Sampson Magistrate Judge.  The Geneva County Sheriff's Office had no involvement in the Plaintiff's arrest or prosecution.  (Ex. C, Ward aff. ¶ 15; Ex. D, Rowe aff., ¶ 14.)

The Geneva County, Alabama Sheriff's Office operates the Geneva County Detention Facility pursuant to sound policies and procedures which ensure that the rights of all inmates incarcerated therein are respected.  Members of the jail staff are trained both in house and at certified training programs and academies regarding all aspects of their jobs, including the administration of medical care to inmates.  (Ex. C, Ward aff. ¶ 7; Ex. D, Rowe aff., ¶ 6.)  Upon admission to the Geneva County Detention Facility, the booking officer completes a health screening form for the inmate. (Ex. C, Ward aff. ¶ 8; Ex. D, Rowe aff., ¶ 7.)

It is the policy of the Geneva County Sheriff's Office that all inmates incarcerated in the Geneva County Detention Facility be allowed to request health care services at any time. Requests of an emergency nature may be made either verbally or in writing, but all requests for non-emergency care must be submitted in writing.  Members of the jail staff are charged with the responsibility of accepting requests for medical treatment from inmates and taking appropriate action.  Inmates who have an emergency medical problem are taken to the Emergency Room for treatment. (Ex. C, Ward aff. ¶ 9; Ex. D, Rowe aff., ¶ 8.)  With regard to inmates housed for the City of Sampson, the policy of the Geneva County Sheriff's Department is as follows:  When a

member of the jail staff receives a request for medical treatment from an inmate, it is his or her responsibility to turn that request form over to the on duty jailer or matron.  The on duty jailer or matron will then contact the City of Sampson.  At that point, the City of Sampson is responsible for taking the appropriate steps in responding to the request, such as making an appointment with a health care provider and transporting the inmate to his appointment.  In the event that an inmate is in need of immediate medical treatment, any Geneva County Detention Facility staff member who becomes aware of that need will transport that inmate to the Emergency Room himself.  The City of Sampson would then be notified to come to the Emergency Room and take over from there. (Ex. C, Ward aff. ¶ 10; Ex. D, Rowe aff., ¶ 9.)

The Plaintiff submitted a request form on January 13, 2006, asking for the Sampson Police Department to be contacted to take him to the doctor because he had fallen and hurt himself.  (Exhibit E, Inmate File, Inmate Request Form dated January 13, 2006.)  Administrator Rowe received the request and contacted the Sampson Police Department that day per the Geneva County Detention Facility policy.  (Ex. E.)  The Plaintiff was transported to the Wiregrass Medical Center that day.  (Exhibit F, Wiregrass Medical Center Records[1] dated January 13, 2006.)  On January 24, 2006, the Plaintiff requested to go to the doctor for an ear infection. (Exhibit G, Inmate File, Inmate Request Form dated January 24, 2006.)  The Sampson Police Department was called that morning.  (Ex. G.)  The Plaintiff was transported to the Wiregrass Medical Center that morning.  (Exhibit H, Wiregrass Medical Center Records[2] dated January 24, 2006.)  On January 27, 2006, the Plaintiff submitted a request form asking that Sampson be called.  (Exhibit I, Inmate File, Inmate Request Form dated January 24, 2006.)  The Geneva County Detention Facility Jailer called Gary Weeks at the Sampson Police Department

---

[1] See Exhibit N, Certification of Records from Wiregrass Medical Center.
[2] See Exhibit N, Certification of Records from Wiregrass Medical Center.

who said that he would get someone to take the Plaintiff to the doctor. (Ex. I.) The Plaintiff was transported to the Wiregrass Medical Center that morning. (Exhibit J, Wiregrass Medical Center Records[3] dated January 27, 2006.) On January 31, 2006, the Plaintiff requested to see the doctor. (Exhibit K, Inmate File, Inmate Request Form dated January 31, 2006.) Sampson was called that morning. (Ex. K.) The Plaintiff was released that day. (Ex. A; Ex. B.) The records from Wiregrass Medical Center indicate that, although the Plaintiff had been released from jail on January 31, 2006, he did not ever go to back to Wiregrass Medical Center until February 16, 2006. (Exhibit L, Wiregrass Medical Center Records[4] dated February 16, 2006.) While the Plaintiff was incarcerated at the Geneva County Detention Facility, he was given his prescribed medications. (Exhibit M, Inmate File, Medication Log.)

It is the policy of the Geneva County Sheriff's Office that persons incarcerated in the Geneva County Detention Facility be housed in humane and sanitary conditions. (Ex. C, Ward aff. ¶ 12; Ex. D, Rowe aff., ¶ 11.) The Geneva County Detention Facility is subject to routine maintenance and repairs on a regular basis by the custodian. (Ex. C, Ward aff. ¶ 11; Ex. D, Rowe aff. ¶ 10.) On a daily basis, inmates are given cleaning materials in order that they may sanitize the living areas of their cells, under the supervision of a member of the jail staff. In addition, at any time, an inmate may request cleaning materials, and such materials are routinely provided by members of the jail staff in response to such requests. Common areas of the jail, including hallways and catwalks, are cleaned by trusties every morning. The jail is regularly inspected for cleanliness by jail staff. (Ex. C, Ward aff. ¶ 12; Ex. D, Rowe aff., ¶ 11.)

There is a problem with water standing in the shower because of a slow drain. Therefore, inmates must wait for the water to drain between each shower. If an inmate wishes to clean the

---

[3] See Exhibit N, Certification of Records from Wiregrass Medical Center.
[4] See Exhibit N, Certification of Records from Wiregrass Medical Center.

shower after the water has drained and before he showers, he may request cleaning materials to do so.  (Ex. D, Rowe aff., ¶ 13.)

All inmates, including the Plaintiff, are always provided with a mat and blanket for sleeping in the event that the number of inmates exceeds the number of beds at the jail.  Never has the Plaintiff had to sleep on the floor without a mat and blanket.  (Ex. C, Ward aff. ¶ 13; Ex. D, Rowe aff., ¶ 12.)  In fact, the Plaintiff was provided with two mats on which to sleep.  (Ex. D, Rowe aff., ¶ 12.)  As soon as a bunk becomes available in the cell block due to the release of an inmate, any inmate sleeping on a mat on the floor may move to the bunk.  (Ex. C, Ward aff. ¶ 13; Ex. D, Rowe aff., ¶ 12.)  Sheriff Ward never received any information or instructions that the Plaintiff was supposed to be six inches off the floor.  (Ex. C, Ward aff. ¶ 14.)

Internal grievance procedures at the Geneva County Detention Facility are available to all inmates.  It is the policy of the Geneva County Detention Facility that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly.  Inmates are given an inmate grievance form upon their request to complete and return to a detention center staff member for any grievance they may have.  It is further the policy and procedure of the Geneva County Detention Facility to place each such grievance in the inmate's file for a record of the same. (Ex. C, Ward aff. ¶ 17; Ex. D, Rowe aff., ¶ 16.)  Upon the Jail Administrator's review of the Plaintiff's inmate file, there is no grievance filed by him concerning the allegations made the basis of his Complaint.  (Ex. D, Rowe aff., ¶ 16.)

Neither Sheriff Ward nor Administrator Rowe ever received a grievance from the Plaintiff.  Had they received such a grievance, they would have followed procedures and responded to the grievance accordingly.  Had the Plaintiff submitted such a grievance, it would have been placed in his inmate file.  (Ex. C, Ward aff. ¶ 18; Ex. D, Rowe aff., ¶ 17.)

## II.    LAW

### A.    All claims by Plaintiff against Sheriff Ward in his official capacity must fail based on Eleventh Amendment immunity and because he is not a "person" under 42 U.S.C. § 1983.

Plaintiff's claims against the Sheriff Ward in his official capacity are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (recognizing that Alabama county sheriffs are state officials and entitled to Eleventh Amendment immunity in their official capacities).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Sheriff Ward in his official capacity should therefore be dismissed because he is not a "person" under § 1983, and, accordingly, claims against him in his official capacity fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3 (recognizing that an Alabama county sheriff is not a person under § 1983.

**B.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.    Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e (a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Geneva County Detention Facility.  Second, he has not alleged that he pursued any grievance through the State Board of Adjustment.  Despite the availability of a grievance procedure at the Geneva County Detention Facility, the Plaintiff did not file a grievance regarding the incident made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Geneva County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former §1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA); Booth v. Churner, 532 U.S. 731, 741 n. 5 (2001) (stating that the exhaustion of administrative

remedies is now mandatory and courts cannot excuse a plaintiff's failure to exhaust administrative remedies regardless of whether the administrative procedures satisfy certain any "'minimum acceptable standards of fairness and effectiveness'").

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis.

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-1313 (11th Cir. 2002) (quotation marks omitted). Because, in the instant case, the Plaintiff has not made a showing of physical injury that is greater than de minimis, his Complaint is due to be dismissed.

> **C.    Alternatively, Sheriff Ward is entitled to qualified immunity because nothing in his conduct crossed a "bright line" contour of clearly established constitutional law.**

Sheriff Ward was acting within his discretionary authority as Sheriff of Geneva County, Alabama, during all times relevant to Plaintiff's Complaint because all his actions were taken in the furtherance of his job duties as Sheriff. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly

established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Sheriff Ward was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d 1419, 1424 (11th Cir. 1997).  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

> 1. **Plaintiff's medical claims are due to be dismissed because he has failed to show that Sheriff Ward was deliberately indifferent to his medical condition.**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Sheriff Ward was deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> In our circuit, a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.

Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal quotation marks omitted) (modification in original).

A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 845-847 (1994). Mere negligence does not suffice to prove deliberate indifference. Farmer, 511 U.S. at 835 ("Deliberate indifference describes a state of mind more blameworthy than negligence."). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

Clearly, in the instant case Plaintiff has not shown that Defendants were in any way deliberately indifferent to any serious medical need of the Plaintiff. The evidence shows that every time the Plaintiff made a request he was taken to the Wiregrass Medical Center the same day as the request was made– except where he was released and free to seek medical care from the provider of his choosing. Upon each request prior to the date the Plaintiff was released, the Geneva County Detention Facility staff followed the policy and procedure set into place and contacted the Sampson Police Department. The Sampson Police Department then arranged for transport of the Plaintiff to the Wiregrass Medical Center. During his incarceration at the Geneva County Detention Facility – a less than one month time period – the Plaintiff was taken to the Wiregrass Medical Center three times. The Plaintiff's allegation that the City of Sampson wanted him to pay for his medical bill does not implicate Sheriff Ward at all. Even so, it is clear

11

that the Plaintiff was not refused medical treatment because of this alleged fact.  Finally, because the Plaintiff has not even alleged that Sheriff Ward was aware or should have been aware of any problem with the medical care he was receiving, Sheriff Ward cannot be said to have been deliberately indifferent to any alleged substantial risk of harm.

An inmate does not have a right to a ***specific*** kind of treatment.  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, Sheriff Ward does not have any kind of medical education, training or experience.  He relies upon the professional judgment of medical professionals who treated the Plaintiff at the Wiregrass Medical Center.  While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim.  In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's

medical director[5] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849. In the instant case, the evidence shows that Plaintiff was by medical providers at the Wiregrass Medical Center. Sheriff Ward, who is not a trained and licensed medical provider, is in no way responsible for second-guessing the judgments of nurses and doctors.

Because it is clear that Sheriff Ward was not deliberately indifferent to any serious medical need of the Plaintiff, and because it is clear that the Plaintiff was taken to the Wiregrass Medical Center upon his requests, it is certain that the Plaintiff's constitutional rights have not been violated with regard to medical care.

## 2.    Plaintiff's conditions of confinement are due to be dismissed.

In order to establish a conditions of confinement claim Plaintiff "must prove three elements:    (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392,

---

[5] The medical director was a trained and licensed nurse. 302 F.3d at 846.

2399, 69 L.Ed.2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element).  Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry.  Wilson v. Seiter, 502 U.S. at 290.

In terms of the subjective component, "[t]o be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d at 1535.  "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'"  Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986).  There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994).  The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions.  Id. at 1979-80.  No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).  Deliberate indifference to an inmate's health or safety can only be shown if the defendants know that the inmate faces a substantial risk of serious harm and disregard the risk by failing to take reasonable measures to abate it.  Farmer v. Brennan, 511 U.S. 825 (1994).  Plaintiff cannot show that Sheriff Ward has been deliberately indifferent to conditions at the Geneva County Detention Facility because he has failed to even allege that Sheriff Ward was

aware of should have been aware of any substantial risk of serious harm or that Sheriff Ward disregard such a risk.

Furthermore, Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any of his allegations constituted cruel and unusual punishment.  In this case, none of the conditions of which Plaintiff complains constitutes an excessive risk to Plaintiff's health or safety.  It is clear from the evidence that Defendants acted according to established lawful policies and procedures with regard to all the Plaintiff's claims.  The Plaintiff was provided with two mats and a blanket on which to sleep, and the Plaintiff had the ability to wait for the shower to drain and/or request cleaning materials to clean the shower whenever he wished.  Neither Plaintiff's sleeping on the floor on a mat, nor the Plaintiff having to wait for the shower to drain before showering rises to the level of a conditional violation.  See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the fact that an inmate had to temporarily "sleep upon a mattress on the floor or on a table is not necessarily a constitutional violation"); Calhoun v. Thomas, 360 F.Supp.2d 1264, 1287 (M.D. Ala. 2005) ("claim that [the plaintiff] was made to sleep on the floor as the third person in a two-person cell is not sufficient, without more evidence, to allege a constitutional violation"); Snipes v. DeTella, 95 F.3d 586, 792 (7th Cir. 1996) (holding that "an inch or two of water in the shower… is not 'an excessive risk to inmate health or safety'")

Based on the foregoing, it is clear that Defendants have not violated Plaintiff's constitutional rights with respect to his conditions of confinement claim.

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided Sheriff Ward with fair warning that his conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that

the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In light of applicable Eleventh Circuit law, it is obvious that Sheriff Ward has done nothing to cross any bright line of clearly established constitutional law. Therefore, the Plaintiff cannot meet his burden in this regard, and Sheriff Ward is entitled to qualified immunity on Plaintiff's claims.

### D.     Plaintiff has failed to allege sufficient personal involvement on each claim.

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988, 999 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397, 401 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Ward was in any way personally involved in any alleged violation of Plaintiff's constitutional rights. As his allegations that he was incarcerated

three times on the same charge, the Plaintiff was arrested by the Sampson Police and incarcerated pursuant to the orders of the Sampson Magistrate Judge.  As to the allegation that he had to pay for his own medical care, because the Plaintiff was a Sampson inmate, the Sheriff of Geneva County has no responsibility to pay for the Plaintiff's medical care.  Even so, no alleged denial of payment caused the Plaintiff any injury as he was taken to the Wiregrass Medical Center upon his request.

Plaintiff has offered no allegation demonstrating that Sheriff Ward was in any way involved in the any of the actions he claims were constitutionally infirm.  There are absolutely no facts to show that Sheriff Ward personally participated in <u>any</u> of his claims, nor does the Plaintiff allege specifically how Sheriff Ward violated his constitutional rights.  In fact, the Plaintiff never alleged facts showing that Sheriff Ward was aware of <u>any</u> of the alleged problems.  Accordingly, the Plaintiff cannot any show affirmative causal connection between Sheriff Ward's actions and the alleged constitutional violation as required by applicable law.

The lack of factual allegations against Sheriff Ward makes it clear that the Plaintiff's claims are an attempt to hold Sheriff Ward liable under a *respondeat superior* theory.  Accordingly, his claim must similarly fail.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978).  The Eleventh Circuit in <u>Hartley v. Parnell</u>, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

17

193 F.3d at 1269.   The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).   In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of Sheriff Ward.   As such, all the Plaintiff's claims are due to be dismissed.

> **E.    Sheriff Ward is entitled to quasi-judicial immunity on the Plaintiff's claim that he was arrested and incarcerated three times on the same charge.**

"Absolute quasi-judicial immunity derives from absolute judicial immunity.   Judges are absolutely immune from civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the 'clear absence of all jurisdiction.'   Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties 'have an integral relationship with the judicial process.'"   Roland v. Phillips, 19 F.3d 552 (11th Cir. 1994) (internal citations omitted).   The Eleventh Circuit in Roland v. Phillips, 19 F.3d 552 (11th Cir. 1994) has recognized that law enforcement personnel in executing a facially valid court order are entitled to absolute quasi-judicial immunity from suit in § 1983 actions.   In holding that the sheriff and deputy sheriff were entitled to absolute quasi-judicial immunity, the court stated that other circuits have held that law enforcement officers executing facially valid court orders are protected by such immunity.  19 F.3d at 555.   The Court further stated:  "Law enforcement officials "must not be called upon to answer for the legality of decisions which they are powerless to control" or "be required to act as pseudo-appellate courts scrutinizing the orders of judges."  19 F.3d at 556. Law enforcement officers must not "be called upon to answer for the legality of decisions which they are powerless to control" or "be required to act as pseudo-appellate courts scrutinizing the orders of judges."  Roland 19 F. 3d at 556.

In the instant case, Sheriff Ward was acting pursuant to a facially valid order from a court of competent jurisdiction to incarcerate the Plaintiff. Accordingly, he is entitled to absolute quasi-judicial immunity on Plaintiffs' claims relating to his incarceration.

### F.    Plaintiff's claims for injunctive relief are moot.

Subject matter jurisdiction is a "threshold issue" which a Plaintiff must establish to the Court's satisfaction before he may prevail on any of his claims. See generally, Rosado v. Wyman, 397 U.S. 397, 402 (1970); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). In the instant case, the Plaintiff cannot overcome this initial hurdle with regard to his claim for injunctive relief because the Plaintiff's claims for injunctive relief are moot. "[A] moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'" National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005). Because Plaintiff has been released from the Geneva County Detention Facility, his claims for injunctive relief are moot. Zatler, at 399 ("In view of [the plaintiff's] subsequent release [from the correctional facility where claims arose], we find that his claims for declaratory and injunctive relief are now moot."); see also Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred. Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects." (citations omitted)); Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (holding that prisoner's claim for injunctive relief was moot and properly dismissed, where prisoner had been transferred from county jail in which unconstitutional conditions allegedly existed); McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's

transfer or release from a jail moots his individual claim for declaratory and injunctive relief."
(citation omitted)).  Accordingly, to the extent that the Plaintiff's Complaint seeks injunctive
relief, it fails for lack of subject matter jurisdiction.

### G.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most
favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a
plaintiff "must do more than show that there is some metaphysical doubt as to the material
facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only
reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See
Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give
credence to the evidence favoring the nonmovant as well as that 'evidence supporting the
moving party that is uncontradicted or unimpeached, at least to the extent that that evidence
comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A.
Miller, Federal Practice and Procedure § 2529, p. 299.[6]  "A reviewing court need not 'swallow
plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions,
periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268
F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v.
American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

---

[6] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been
tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary
judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of
law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## CONCLUSION

Sheriff Ward denies each and every allegation made by Plaintiff Emmett Reed Jones, in the Complaint. Sheriff Ward has not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Sheriff Ward respectfully requests that this Honorable Court treat his Special Report as a Motion for Summary Judgment, and grant unto him the same.

Respectfully submitted this the 5th day of April, 2006.

> **s/C. Richard Hill, Jr.**
> C. RICHARD HILL, JR. Bar No. HIL045
> Attorney for Defendant Greg Ward
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama 36124
> Telephone: (334) 262-1850
> Fax: (334) 262-1889
> E-mail: rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of April, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants: TODD DERRICK, and that I have served the foregoing document on the following non- CM/ECF participant:

> **Emmitt Reed Jones**
> Geneva County Jail
> P.O. Box 115
> Geneva, AL 36340

by placing a true and correct copy of the foregoing in the U.S. Mail, postage prepaid, on this the 5th day of April, 2006.

> **s/C. Richard Hill, Jr.**
> OF COUNSEL